UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **J. CHARLES FARMER and DANA L. FARMER,** *Plaintiffs* | § § § § | |
| **v.** | § § | No.  1:25-CV-01349-DH |
| **PALADIN LAND GROUP,** *Defendant* | § § § | |

## ORDER

Before the Court is Defendant Paladin Land Group, LLC's ("Paladin") motion to dismiss, Dkt. 6, and all related briefing. Having reviewed the filings and the relevant law, the Court grants in part and denies in part Paladin's motion to dismiss.

## I.    BACKGROUND

Plaintiffs J. Charles Farmer and Dana L. Farmer (the "Farmers") hired Paladin to "provide them with the information they needed in order to understand exactly what they would acquire if they purchased an oil and gas mineral and royalty interest that was up for sale." Dkt. 1-1, at 11. Pursuant to the buyer's agreement under which the Farmers purchased "a fee oil and gas and royalty interest in certain property" for $2,100,000.00, the Farmers had 60 days to perform due diligence and assert any objections to the seller if "the property interest they had purchased was less than the buyer had represented." *Id.* at 11-12. During this 60-day due diligence time period, the Farmers entered into a contract (the "Contract") with Paladin under which "Paladin agreed to provide the Farmers with transactional title diligence and

1

royalty interest verification in connection with the purchase of the" properties and interests included in their purchase (the "Lot No. 98250 Royalty Interest") under Paladin's Certified Title Assurance Program. *Id.* at 12.

Paladin provided the Farmers with two due-diligence reports, which concluded that the "descriptions of the net mineral acres, effective gas royalty, effective oil royalty, net royalty acres, unit net revenue interest and net revenue acres" provided by the seller were accurate. *Id.* at 13. Based on Paladin's findings, the Farmers did not assert any objections during the 60-day due diligence period and acquired the Lot No. 98250 Royalty Interest. *Id.* The Farmers later learned that one of the specific royalty interests in the Lot No. 98250 Royalty Interest, a pooled unit of land known as "Great Tiger 2," had been adjusted to include less acreage—which "dramatically reduced" the Farmers' return on their investment. *Id.* at 14. The Farmers allege that Paladin should have identified the adjustment to the acreage during its due-diligence search since it had been a matter of public record at the time Paladin evaluated the Lot No. 98250 Royalty Interest. *Id.* at 14-15.

Based on Paladin's allegedly deficient due-diligence review, the Farmers sued Paladin in state court for breach of contract,[1] negligent misrepresentation, negligence, breach of express warranty for services, and for violations of the Texas Deceptive Trade Practices Act ("DTPA"). *Id.* at 16-19. Paladin removed this case to

---

[1] The Farmers also asserted certain theories of liability in the alternative to the existence of an enforceable contract. Dkt. 1-1, at 16 ("In the alternative to the existence of one or more enforceable agreements as alleged above, the theories of promissory estoppel, implied contract (whether at law or in fact), course of dealing and quantum meruit apply to any of the agreements, understandings, courses of dealing, long-standing procedures and/or other business dealings that might be found not to meet all of the elements of a contract.").

federal court based on diversity jurisdiction, as all parties are citizens of different states and the Farmers seek monetary relief "in excess of $1,000,000.00." Dkts. 1, at 2-3; 1-1, at 8. Paladin moves to dismiss the Farmers' claims against it, arguing that their tort claims and statutory claims are barred by the economic-loss rule and that the Farmers have not stated a claim for breach of contract. Dkt. 6, at 2. The Farmers oppose Paladin's motion. *See* Dkt. 7.

## II.     LEGAL STANDARD

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged." *Id*. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III.    DISCUSSION

Paladin moves to dismiss each of the Farmers' claims against it, arguing that they are either barred by the economic-loss rule or otherwise fail to state any claims for relief under Texas or Oklahoma law. Dkt. 6. Paladin attached to its motion two exhibits, including a copy of the Contract and one of the due-diligence reports[2] Paladin prepared for the Farmers. Dkts. 6-1; 6-2. While the Farmers do not object to

---

[2] Paladin insists that it included the two reports as an attachment to its motion, but as the Farmers point out, the exhibit only includes one report. Dkt. 6-2.

Paladin's proffering of the Contract, they object to the Court's consideration of the report since it is "beyond the types of materials courts would ordinarily take judicial notice of in deciding a Rule 12(b)(6) motion." Dkt. 7, at 5. The Farmers contend that the report Paladin attached to its motion is not central to their claims because "[i]t **does not** concern the Great Tiger 2 mineral interest, which is the mineral interest at issue with respect to Plaintiffs' claims in this lawsuit." *Id.* In reply, Paladin insists that the Court may rely on either due-diligence report since the Farmers generally reference both in their petition. Dkt. 8, at 7.

The Court will consider the Contract, but not the report, in evaluating Paladin's motion to dismiss. While the Court is generally prohibited from considering information outside the pleadings, it may consider documents outside the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *Maloney Gaming Mgmt., LLC v. St. Tammany Par.*, 456 F. App'x 336, 340 (5th Cir. 2011) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). The parties agree that the Contract attached to Paladin's motion is referenced in the complaint and central to the Farmers' claims, and as such, may properly be considered by the Court in ruling on Paladin's motion to dismiss. The parties also agree that the due-diligence report attached to the motion is referenced in the complaint but disagree as to whether it is central to the Farmers' claims. Dkts. 7, at 5; 8, at 7.

Although Paladin insists that the due-diligence report is central to the Farmers' claims, the Farmers point out that the single report Paladin attached to its

5

complaint does not address Great Tiger 2, the mineral interest that forms the basis of their claims. Dkts. 6-2; 7, at 5. Paladin counters by arguing that "either of the two reports are appropriate for the Court to consider on the motion to dismiss," yet the Court has no basis to conclude that the report Paladin attached to its motion applies to Great Tiger 2, the mineral interest forming the basis of the Farmers' claims, or that the due-diligence report applicable to that mineral interest contained the same clauses included in the report Paladin attached to its motion to dismiss. *See Cervantes v. Tenet Hosps. Ltd.*, 372 F. Supp. 3d 486, 492 (W.D. Tex. 2019) (declining to consider attachment to motion to dismiss where it "the Complaint refenced the [document]" but "it [was] not central to Plaintiff's claims"). Given that the report applies to interests not at issue in this litigation, the Court finds that it is not central to the Farmers' claims and will not consider it in evaluating the motion to dismiss. The Court will thus only evaluate the Contract, but not the report, in assessing each of the Farmers' claims Paladin seeks to dismiss.

### A.      The economic-loss doctrine bars the Farmers' tort claims.

The Farmers brought tort claims against Paladin, "[i]n the alternative to the existence of an enforceable contract between the parties encompassing the same subject matter and damages," for negligence, and negligent misrepresentation.[3] Dkt.

---

[3] The Farmers did not specify under which state's law they bring their tort claims but given that they brought their DTPA claim under Texas law and originally filed this lawsuit in Texas state court, the Court examines the Farmers' tort claims under Texas law. Dkts. 1-1, at 17-19; 7. Moreover, given that the application of the economic-loss doctrine "does not meaningfully differ" under Oklahoma or Texas law, the Court "need not resolve the choice-of-law question." *Torrey v. Infectious Diseases Soc'y of Am.*, 86 F.4th 701, 704 (5th Cir. 2023); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W. 3d 1, 12 (Tex. 2007) (" The [economic-loss] rule generally precludes recovery in tort for economic losses resulting from the failure

6

1-1, at 16-19. Paladin moves to dismiss the Farmers' tort claims as barred by the economic-loss doctrine because they arise from the Farmers' dissatisfaction with Paladin's performance under the Contract. Dkt. 6, at 6-12. The Farmers respond that their tort claims are not barred by the economic-loss doctrine because Paladin seeks to evade liability under the Contract,[4] the Farmers list damages that fall outside of those available for a breach-of-contract claim, and because they plan to amend their complaint to file a fraudulent inducement claim. Dkt. 7, at 13.[5]

The economic-loss rule "precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties." *Ibe v. Jones*, 836 F.3d 516, 526 (5th Cir. 2016) (citing *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)). Courts examine "'the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff'" to determine whether the economic-loss doctrine bars a tort claim. *See id.* (quoting *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex.

---

of a party to perform under a contract."); *Okla. Gas & Elec. Co. v. Toshiba Int'l Corp.*, No. CIV-14-0759-HE, 2016 WL 3659941, at *5 (W.D. Okla. July 1, 2016) ("Under [the economic-loss] rule, a claimant cannot recover in tort for a breach of contractual duty where the breach resulted only in 'economic loss and disappointment,' and there is no personal injury or damage to other property." (citing *Waggoner v. Town & Country Mobile Homes, Inc.*, 808 P.2d 649, 653 (Okla. 1990)); *but see Gavilon Fertilizer, LLC v. Newbern Fabricating, Inc.*, No. 14-CV-0610-CVE-TLW, 2016 WL 4059251, at *6 (N.D. Okla. July 28, 2016) (noting that Oklahoma courts have not explicitly extended the economic-loss doctrine to cases outside the products-liability context).

[4] The Farmers offer no authority in support of their argument that Paladin cannot stipulate to the existence of the Contract yet argue that it is not subject to liability under it, while also arguing that the tort and statutory claims are subject to the economic-loss doctrine. *See* Dkt. 7.

[5] The Court addresses the Farmers' request for leave to amend in Section III(E).

1996)). "If the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort," but "if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract." *DeLanney*, 809 S.W.2d at 494.

Here, the Farmers' tort claims arise from their allegation that "Paladin breached it duties to the Farmers by … failing to conduct a sufficient due diligence review of the public records on file and/or by failing to disclose to the Farmers the existence of the DPU's on file that reflected the discrepancy in the Great Tiger acreage." Dkts. 1-1, at 15; 16-17 (alleging negligent misrepresentation claim based on Paladin having "supplied false information for the guidance of others" and failing to "use reasonable care in obtaining or communicating the information"); 17 (alleging negligence claim based on Paladin's failure to "exercise reasonable care in performing services" and "ascertaining the accuracy of the information given or provided"); 7, at 15 (arguing that the Farmers' "negligent misrepresentation claim is premised upon Paladin's subsequent erroneous confirmation of the accuracy of the royalty interests," a service Paladin rendered under the Contract).

Such alleged duties relating to the accuracy of the information regarding the Lot No. 98250 Royalty Interest arise solely[6] from the Contract the parties entered

---

[6] The Farmers explicitly disclaim that their negligent misrepresentation claim is based on any misrepresentations Paladin made before entering into the Contract (including any information on its website), arguing instead that the claim rests on Paladin's "statements … in which it negligently verified the accuracy of the royalty interests described in the Lot No.

8

into wherein Paladin agreed to provide "[t]ransactional title diligence" by "Producing Mineral/Royalty Interest Verification" for the Lot No. 98250 Royalty Interest; the Farmers have not identified any basis for such duties independent of the Contract. Dkt. 6-1; *Pisharodi v. Wells Fargo Bank, N.A.*, No. 1:19-CV-41, 2022 WL 2791765, at *5 (S.D. Tex. May 24, 2022), *R. & R. adopted*, 2022 WL 2789017 (S.D. Tex. July 15, 2022) ("When a party fails to uphold a duty that exists solely because of a contractual agreement, then the economic loss rule applies, barring tort-based claims." (citing *Stauffacher v. Coadum Cap. Fund 1, LLC*, 344 S.W.3d 584, 591 (Tex. App.—Houston [14th Dist.] 2011, pet. denied))).[7]

Moreover, the Farmers' damages result from Paladin's failure to identify the adjustment to the acreage of the "Great Tiger 2" unit during the due-diligence search called for under the Contract, which "dramatically reduced the amount of the Farmers' royalty payments and had further caused the value of their investment in

---

98250 Royalty Interest Data Package," a verification Paladin was tasked with doing under the Contract. Dkts. 6-1, at 8; 7, at 14.

[7] The Farmers rely on *Keel v. Titan Constr. Corp.*, 639 P.2d 1228, 1232 (Okla. 1981), for the proposition that "[a]ccompanying every contract is a common-law duty to perform it with care, skill, reasonable experience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract." Dkt. 7, at 12. Yet as Paladin points out, *Keel* dealt with "liability for negligent breach of a contract with a third party" and relied on a Texas appellate case, *New Trends, Inc. v. Stafford-Lowdon Co.*, 537 S.W.2d 778, 782 (Tex. Civ. App.—Fort Worth 1976, writ re'd n.r.e), that in turn relied on a Texas Supreme Court case, *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (Tex. 1947). Yet both *New Trends* and *Scharrenbeck* were issued before the Texas Supreme Court "severely restricted the practical import of *Scharrenbeck* by holding that if defendant's negligent conduct" gives "rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.'" *Prendes v. Select Portfolio Servicing, Inc.*, No. 4:12-CV-337-Y, 2012 WL 6913511, at *7 (N.D. Tex. Dec. 28, 2012) (citing *DeLanney,* 809 S.W.2d at 494).

the Lot No. 98250 Royalty Interest to be worth far less than what they paid." Dkt. 1-1, at 14; *DeLanney*, 809 S.W.2d at 495 (applying economic-loss doctrine where defendant inadvertently omitted plaintiff's advertisement from Yellow Pages and plaintiff sued for negligence, noting that economic loss rule applied because the "duty to publish [plaintiff's] advertisement arose solely from the contract" and plaintiff's damages "were only for the economic loss caused by [defendant's] failure to perform."). Although the Farmers argue that they have pleaded "other types of damages" apart from those associated with claims for breach of contract, they do not identify what those non-contractual damages are or how they stem from any conduct apart from Paladin's failure to competently perform the due-diligence services agreed to under the Contract. Dkts. 1-1, at 15 (alleging injury arising from Paladin's "failing to conduct a sufficient due diligence review of the public records on file and/or by failing to disclose to the Farmers the existence of the DPU's on file that reflected the discrepancy in the Great Tiger 2 acreage"), 20; 7, at 13; *Henderson v. Wells Fargo Bank, N.A.*, 974 F. Supp. 2d 993, 1011 (N.D. Tex. 2013) (dismissing negligence claim where plaintiff's "only alleged injury is the economic loss to the subject matter of the contract at issue").[8]

Because the Farmers would not have any tort claims against Paladin if it had competently performed under the Contract, they have failed to allege independent

---

[8] The Farmers also cite *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663-64 (Tex. 1998), for the proposition that "economic out-of-pocket damages are recoverable in a negligent misrepresentation claim, but benefit-of-the-bargain damages are not," yet there—much as here—plaintiff did not sufficiently identify out-of-pocket damages distinct from benefit-of-the-bargain damages as required to recover under a claim for negligent misrepresentation. Dkts. 1-1, at 15-17, 20; 7, at 12.

torts apart from their breach-of-contract claim. *Nat'l Rifle Ass'n of Am. v. Ackerman McQueen, Inc.*, No. 3:19-CV-2074-G, 2021 WL 3618113, at *18 (N.D. Tex. Aug. 16, 2021) ("One helpful rule of thumb in discerning whether the defendant's conduct constitutes an independent tort is to inquire whether, if the defendant fully complied with the contract, the plaintiff could still sue under tort." (citing *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 726 (5th Cir. 2015))). The Court will dismiss the Farmers' claims for negligence and negligent misrepresentation as barred by the economic-loss doctrine.

> **B.    The economic-loss doctrine does not bar the Farmers' statutory claims brought under the DTPA.**

The Farmers brought a claim against Paladin, "[i]n the alternative to the existence of an enforceable contract between the parties encompassing the same subject matter and damages," for violations of the DTPA. Dkt. 1-1, at 18-19. The Farmers allege that Paladin violated the DTPA through: (1) a breach of express or implied warranty; (2) "any unconscionable actions or course of action"; and (3) misrepresenting their services or failing to disclose information about those services in such a way that induced the Farmers to enter into the transaction. *Id.* Paladin moves to dismiss the Farmer's DTPA claim as barred by the economic-loss doctrine. Dkt. 6, at 7-16. The Farmers respond that their DTPA claim is not barred by the economic-loss doctrine because it is based on Paladin's independent duty "not to make knowing misrepresentations inducing a party into a contract." Dkt. 7, at 11.

"The economic loss rule also applies to DTPA claims, where the injury resulted from the failure to perform under the contract." *Pisharodi v. Wells Fargo Bank, N.A.*,

No. 1:19-CV-41, 2022 WL 2791765, at *5 (S.D. Tex. May 24, 2022) (citing *BCC Merch. Solutions, Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 469 (N.D. Tex. 2015)), *R.& R. adopted*, 2022 WL 2789017 (S.D. Tex. July 15, 2022). Under Texas law, "[a]n allegation of a mere breach of contract, without more, does not constitute a 'false, misleading or deceptive act' in violation of the DTPA." *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 295 (5th Cir. 2016) (quoting *Ashford Dev., Inc. v. USLife Real Est. Servs. Corp.*, 661 S.W.2d 933, 935 (Tex. 1983)). "[T]he inquiry is whether the alleged unconscionable conduct 'could have resulted in the absence of a contract between the parties.'" *Id.* (citing *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13 (Tex. 1996) (per curiam)).

Here, the Farmers base their DTPA claim on the representations Paladin provided on its website regarding its services, including that Paladin's Certified Title Assurance Program: (1) is a "comprehensive" title examination that includes a "full suite" of due-diligence services; (2) is "backed by up to $6MM in errors and omissions insurance and professional liability coverage"; (3) "renders title advice at the marketable standard as to title fitness and merchantability of the properties"; and (4) "carry Lloyd's of London's surety backing" for its reports and opinions. Dkts. 1-1, at 10-13; 7, at 14-15 ("Plaintiffs' petition alleges the misrepresentations on Paladin's website violated the Texas DTPA."). Because the Farmers' DTPA claim arises from representations Paladin made to induce them to enter into the Contract with Paladin, rather than Paladin's execution of the Contract, the claim is not barred by the economic-loss doctrine because Paladin's duty to accurately represent their services

12

arises from the statute, not the Contract. *Forbes v. Wells Fargo Bank, N.A.*, No. 2:14-CV-317, 2015 WL 419623, at \*6 (S.D. Tex. Jan. 29, 2015) (finding that the economic-loss doctrine did not bar statutory claim because the duty "not to engage in particular kinds of misrepresentations … is not solely imposed by the contract between the parties"); *R.P. Small Corp. v. Land Dep't, Inc.*, 505 F. Supp. 3d 681, 711 (S.D. Tex. 2020) (concluding that DTPA claims were not barred by the economic-loss doctrine because they "relate to the representations made by the defendants prior to entering into the agency agreements" and "are therefore independent of the duties in the agreements themselves").[9] Given that Paladin offers no other basis for dismissal of the Farmers' DTPA claim,[10] the Court will deny Paladin's motion to dismiss the Farmers' claim for violations of the DTPA.

**C.     The Farmers' claim for breach of contract fails as a matter of law based on the exculpatory provision contained in the Contract.**

The Farmers also brought a breach-of-contract claim against Paladin, alleging that Paladin breached the Contract between the parties by "failing to conduct a

---

[9] Moreover, "if a particular duty is defined both in a contract and in a statutory provision, and a party violates the duty enumerated in both sources, the economic loss rule does not apply." *McCaig v. Wells Fargo Bank (Tex.), N.A.*, 788 F.3d 463, 475 (5th Cir. 2015) (citing *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).

[10] The Court rejects Paladin's argument that the Farmers' complaint should be dismissed for failure to sufficiently allege damages, as the Farmers alleged that Paladin's conduct "dramatically reduced the Farmers' return on their investment." Dkts. 1-1, at 14 (alleging that Paladin's faulty due-diligence service "dramatically reduced the amount of the Farmers' royalty payments and had further caused the value of their investment in the Lot No. 98250 Royalty Interest to be worth far less than what they paid"), 6, at 20-21. Moreover, Paladin's arguments related to the statements on its website are aimed at the Farmers' negligent-misrepresentation claim, not their DTPA claim. *See* Dkt. 6, at 12-16.

13

sufficient due diligence review," as called for under the Contract. Dkt. 1-1, at 15-16. Paladin argues that the Farmers' breach-of-contract claim fails because: (1) Paladin performed the service—a search by parcel number—that it was hired to do, and thus did not breach the Contract; and (2) the Contract contains an indemnity clause under which the Farmers agreed to "indemnify and hold harmless the other from any claims, losses, damages, attorney's fees, court costs, or reasonable expenses of litigation, arising out of the indemnifying party's performance or non-performance of services, duties, or obligations in connection with this contract." Dkts.  6, at 17-20; 6-1, at 6. The Farmers respond that the release in the Contract is unenforceable under Oklahoma law. Dkt. 17, at 17-20.[11] In reply, Paladin maintains that Oklahoma law countenances the enforcement of the release in the Contract. Dkt. 8, at 9-10.

While indemnity provisions generally involve "an agreement 'to make good and save harmless the person, with whom the contract is made, upon an obligation of such person to a third person,'" here the provision at issue applies to the parties to the Contract. Dkts. 6-1, at 6; *Arnold Oil Props., LLC v. Schlumberger Tech. Corp.*, No. CIV-08-1361-D, 2010 WL 476633, at \*3 (W.D. Okla. Feb. 4, 2010) (quoting *Thomas v. Williams*, 49 P.2d 557 (Okla. 1935)), *aff'd sub nom. Arnold Oil Props. LLC v.*

---

[11] Oklahoma law applies to the Farmers' breach-of-contract claim based on the choice-of-law provision contained in the Contract. Dkt. 6-1, at 6 ("This Contract shall be governed by the laws of the State of Oklahoma, without reference to conflict of law rules or principles."); *Tulsa Athletics, LLC v. Nat'l Premier Soccer League, Inc.*, No. 24-CV-194-CVE-SH, 2024 WL 3568587, at \*7 (N.D. Okla. July 29, 2024) ("Under Oklahoma law, parties are free to specify the rules under which a contract will be enforced, and a choice law provision will be enforced unless the contractual provision is illegal or contrary to the law or public policy of Oklahoma."). Neither party objected to the application of Oklahoma law to the Farmers' breach-of-contract claim. *See* Dkts. 6; 7.

*Schlumberger Tech. Corp.*, 672 F.3d 1202 (10th Cir. 2012); *Arnold*, 672 F.3d at 1206-07 ("'An exculpatory clause releases in advance the second party for any harm the second party might cause the first party after the contract is entered. [An] indemnification clause ... protects against claims made by parties outside the contract.'" (quoting *Federated Rural Elec. Ins. Corp. v. Williams*, Nos. 97,043, 97,051, 2002 WL 31041863, at *4 (Okla. Civ. App. 2002)). "'The Oklahoma Supreme Court has long recognized that exculpatory contracts, i.e., a contract to avoid liability for damages also known as a "waiver" or "release," may be valid and enforceable.'" *Combs v. W. Siloam Speedway Corp.*, 406 P.3d 1064, 1066 (Okla. Civ. App. 2017) (quoting *Manning v. Brannon*, 956 P.2d 156, 158 (Okla. Civ. App. 1997)).

Under Oklahoma law, exculpatory clauses will be enforced as long as: "(1) their language [ ] evidence[s] a *clear and unambiguous* intent to exonerate the would-be defendant from liability for the sought-to-be recovered damages; (2) at the time the contract (containing the clause) was executed there must have been *no vast difference* in bargaining power between the parties; and (3) enforcement of these clauses must never (a) be injurious to public health, public morals or confidence in the administration of the law *or* (b) so undermine the security of individual rights vis-à-vis personal safety or private property as to *violate public policy*." *Linda Wright v. W. Shamrock Corp.*, No. 13-CV-419-TCK-FHM, 2016 WL 4386038, at *2 (N.D. Okla. Aug. 17, 2016) (citing *Schmidt v. United States*, 912 P.2d 871, 874 (Okla. 1996)

15

(emphases in original)).[12] Here, the release contained in the Contract bars the Farmers' breach-of-contract claim.

First, the language of the Contract clearly and unambiguously evinces an intent to "hold harmless the other from any claims, losses, damages, attorney's fees, court costs, or reasonable expenses of litigation[] arising out of the indemnifying party's performance or non-performance of services, duties or obligations in connection with this contract." Dkt. 6-1, at 6; *Smith v. Verizon Commc'ns, Inc.*, No. CIV-04-190-M, 2005 WL 1907307, at \*3 (W.D. Okla. Aug. 10, 2005) ("'A release is a contract. If the language of a contract is clear and without ambiguity, the Court is to interpret it as a matter of law.'" (quoting *Corbett v. Combined Commc'ns Corp. of Okla., Inc.,* 654 P.2d 616, 617 (Okla. 1982))).

In evaluating the equality of the bargaining power between the parties, courts consider the importance of the subject matter to the physical or economic well-being of the releasing party and the amount of free choice the releasing party could have exercised in seeking alternate services. *Linda Wright*, 2016 WL 4386038, at \*3. Although the Farmers' purchase of an oil and gas interest worth over $2,000,000 was undoubtably economically important to them, nothing in the record suggests that the Contract for due-diligence services was essential to their economic well-being—in fact, their ability to invest such a large sum suggests that they are sophisticated parties. Dkt. 1-1, at 11. Moreover, while neither party presented evidence or

---

[12] Although Paladin argues that this three-part test only applies to provisions purporting to release a party from tort liability, the Court analyzes the release under this test out of an abundance of caution given that Paladin cited no case law holding that such a test does not apply in the context of a breach-of-contract claim. Dkt. 8, at 9-10.

16

argument on the availability of other due-diligence service providers, the Court presumes that alternate providers were available at the time the Farmers sought such services.

Finally, nothing in the exculpatory clause violates public policy by either "injur[ing] public morals, public health or confidence in the administration of the law" or "destroy[ing] the security of individuals' rights to personal safety or private property." *See* Dkt. 6-1, at 6; *Linda Wright*, 2016 WL 4386038, at \*3 ("[C]ourts should void contract clauses on public-policy grounds 'rarely, with great caution and in cases that are free from doubt.'" (citations omitted)). The exculpatory clause is thus valid and enforceable against the Farmers. The Farmers' objection that the clause is "*completely and utterly repugnant* to the law and violates public policy" is unpersuasive given that they offer no authority—based either on the law or the record—for the Court to make such a finding, especially given that "the terms of the parties' contract, if unambiguous, clear, and consistent, are accepted in their plain and ordinary sense and the contract will be enforced to carry out the intention of the parties as it existed at the time the contract was negotiated." *Osprey LLC v. Kelly-Moore Paint Co. Inc.*, 984 P.2d 194, 198 (Okla. 1999). The Court will enforce the release contained in the Contract and grant Paladin's motion to dismiss the Farmers' claim for breach of contract.

### D.    The Farmers' alternative theories for liability fail based on the existence of the Contract.

The Farmers plead theories of "promissory estoppel, implied contract (whether at law or in fact), course of dealing and quantum meruit" in the alternative to "the

17

existence of one or more enforceable agreements." Dkt. 1-1. Paladin argues that these alternative theories of liability must be dismissed based on the existence of the Contract, which governs the parties' dispute. Dkt. 6, at 3, 16-17.[13] The Farmers, once again without citation to any case law, insist that the existence of an express contract "does not justify dismissal of quasi-contractual theories alleged in the alternative, particularly when Paladin claims the Contract is unenforceable." Dkt. 7, at 18.[14]

Given that Paladin stipulates to the existence and enforceability of the Contract, the Farmers' alternative theories for liability fail as a matter of law. Dkt. 6, at 18; *Jani-King Franchising, Inc. v. Jani-King (GB) Ltd.*, No. 3:13-CV-4136-P, 2016 WL 7680527, at *2 (N.D. Tex. Feb. 25, 2016) ("[U]nder Texas law, promissory estoppel is only available in the absence of a valid and enforceable contract."); *Quintel Tech., Ltd. v. Huawei Techs. USA, Inc.*, No. 4:15CV307, 2018 WL 446320, at *7 (E.D. Tex. Jan. 17, 2018) ("The law is clear that quasi-contractual claims are unavailable when a valid, express contract governing the subject matter of the dispute exists."). Courts have applied this rule even where the contract at issue purports to release liability for contract claims. *See, e.g.*, *Morsi v. MarineMax Inc.*, 721 F. Supp. 3d 526,

---

[13] Paladin incorrectly identifies the Farmers' claim for breach of express warranty as a "quasi contract theory" subject to dismissal based on the existence of the Contract. Dkt. 6, at 3, 16-17; *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 388 (Tex. 2011) ("[A] breach of express warranty claim, while distinct from a breach of contract claim, is a 'creature of contract' and is 'contract-based.'" (citing *Med. City Dall., Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 61 (Tex. 2008))). Given that Paladin did not offer any other basis for dismissal of the Farmers' claim for breach of express warranty, its motion to dismiss that claim will be denied.

[14] The Farmers misunderstand Paladin's argument for dismissal with regard to their breach-of-contract claim. Rather than arguing that the Contract is unenforceable, Paladin in fact seeks to enforce the exculpatory provision of the Contract *against* the Farmers—an argument that depends on the enforceability of the Contract. *See* Dkt. 6, at 17-20.

532-33 (S.D. Tex. 2024) (granting summary judgment in defendant's favor on breach-of-contract claim based on "as is" clause that "'negate[d] any contractual claims based on defects in the condition of the' yacht" and on promissory-estoppel claim because "the existence of the contract precludes promissory estoppel"). The Farmers' quasi-contractual theories of liability will be dismissed.

### E.   The Farmers will be granted leave to amend their complaint to add a claim for fraudulent inducement.

The Farmers request leave to amend their complaint to add a claim for fraudulent inducement based on the same factual allegations underlying their claim for violations of the DTPA; namely, that Paladin misrepresented the "comprehensive" nature of their due-diligence services. Dkt. 7, at 10, 15. Paladin oppose the Farmers' request to amend their complaint, arguing—without more—that "Plaintiffs could have—but didn't—plead fraudulent inducement." Dkt. 8, at 3-4, 6-7. "Whether leave to amend should be granted is entrusted to the sound discretion of the district court[.]" *Young v. USPS ex rel. Donahoe*, 620 F. App'x 241, 245 (5th Cir. 2015). "The court should freely give leave when justice so requires." *Id.* (quoting Fed. R. Civ. P. 15(a)(2)). In determining whether to grant leave to amend, the relevant considerations are: "1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004). Having considered the relevant factors, the Court finds no substantial reason to deny the Farmers' request and will grant them leave to amend their complaint to add a claim for fraudulent inducement.

## IV.   CONCLUSION

Based on the foregoing, **IT IS ORDERED** that Paladin's motion to dismiss, Dkt. 6, is **GRANTED IN PART** and **DENIED IN PART**. Specifically, Paladin's motion to dismiss the Farmers' claims for negligence, negligent misrepresentation, breach of contract, and quasi-contractual theories of liability is **GRANTED,** and those claims are **DISMISSED WITH PREJUDICE**. Paladin's motion is otherwise denied.

**IT IS FURTHER ORDERED** that the Farmers' request for leave to amend their complaint is **GRANTED**. The Farmers shall file an amended complaint, consistent with this Order, within **ten days** of the date of this Order.

SIGNED January 13, 2026.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE